This morning is 424, excuse me, 417-0165, Purple v. Garza. For the appellant is Amy Kemp, who are she? For the appellee, Ms. McClain. Ms. Kemp, you may proceed. May it please the court. Counsel. My name is Amy Kemp. I work at the office of the student appellate defender and I represent the appellate Alfredo Garza and his family. Lawful custody can be the difference between resisting or obstructing a police officer, a passing misdemeanor punishable by no more than one year of compliance, and a passing felony offense punishable by three to seven years in prison. But what is lawful custody? That is a legal question before this court today, and it is subject to the no-vote decision. Now, statute and case law do not provide a clear definition of lawful custody, but this court is not without guidance in these interpretive facts. Justice Steichman indicated in the people v. Ellspermann that lawful custody begins when an arrest is completed. If I may briefly recount the exact language from Ellspermann, because I feel it is so instructive here. The legislature intended Section 311 of the Code resisting or obstructing a police officer to apply to those instances in which a police officer attempts to make an arrest, but the suspect runs away. If a police officer has succeeded in making an arrest and the suspect then escapes from police custody, that criminal conduct is covered by Section 316 of the Code, defining the offense of escape. Now, that language is part of the reasoning of Ellspermann, not the holding. It is persuasive, particularly in light of other authorities. The Code of Criminal Procedure defines arrest as the taking of a person into custody and provides that arrest is made by the actual restraint of the person or by his submission to custody. Didn't this defendant submit to custody when he acknowledged that he was going to be permitted to dress with a police officer two feet apart, that he was going to be permitted to say goodbye to his son, that he was told you were under arrest, and he was told as a courtesy, we won't handcuff you inside the house in front of your family, but you will be handcuffed immediately upon exiting the doorway. Doesn't the defendant understand that he is under arrest? And he's also been told, there is a warrant for your arrest, and we're serving the warrant. Isn't he in custody at that point? No, he is not in custody at that point. The facts that you've recounted are accurate. And I believe Mr. Garza understood that he would be placed under arrest, that that was coming. So the words don't count? We know under Casilla that the words are not enough. Casilla is a 1986 case out of the 2nd District, and in that case, police said, you're under arrest, and the defendant retreated into his home, did a little bit of talking with the police, and then ran off out of the house and into a cornfield. So under the facts that Justice Connacht just recited, what else is necessary for a defendant to be considered in lawful custody? What would do it in your mind? Completion of the arrest. Which means what? Under the Code of Criminal Procedure, I think our best indication of what that means is actual restraint of the person for submission to custody. Actual restraint of the person is physical. Examples we have of actual restraint are from McClanahan and Lauer. Both, excuse me, McClanahan is a 3rd District case, and Lauer is out of the 1st District. In those cases, the physical restraint is rather extreme. McClanahan involved an officer struggling with the defendant and forcing him onto the foot of a car. While Lauer involved a very extreme physical struggle that went on for some minutes, ultimately the officer got the defendant into a retention hold with his arm around the defendant's neck and dragged him from the back bedroom of the house towards the front door. Those are examples of actual restraints under the case law. Physical touching is neither necessary nor sufficient to constitute a completed arrest. So in this case, we do have physical touching. We have the officer briefly touching or holding Mr. Garza's upper arm at or near the side door as Mr. Garza moved toward the side door to exit. Counsel, let me ask this question now. The officers happen to be coming to the defendant's residence when they learned that there was an outstanding warrant on unrelated felony offense, is that correct? That's correct. We call it a scan as a dog's bark. So they know there's a warrant for an unrelated felony offense, and that means they should arrest them, is that correct? That's correct. So they get to his house and they tell him, we have a warrant for your arrest and you have to come with us. Is that correct? That's not the exact phrasing that's testified to, but in substance, yes. And here's the defendant in his home with his family. Didn't the police handle this exactly as we would want police officers to handle a matter that is a potential embarrassment in sensitivity regarding the defendant and his family so as not to demean him in their presence, not to belittle him, to handle it as professionally and with the kind of dignity as much as the situation permits? Isn't what they did here exactly what we would want police officers to do in this situation? Your Honor, I agree that the officers' motivations here were... Not their motivation. Isn't what they did here exactly how we would want officers to act in this situation? The alternative, let me make it clear, the alternative is saying, shut up, turn around, put your hands behind your back and cuff and stuff him right there on the spot. And when his family gets upset, they say, get out of the way. Is that preferable? It depends on what... That's, I think, a fairly straightforward question. I mean, they have two alternatives. One is how they did it. And the second is the example I gave you of how they could have done it and how, had they done it that way, you would have no argument on whether he was under arrest and if he fled from the officers at that point, he'd be guilty of escape, right? Yes, I agree that the officers... So, of the two situations, the one that actually occurred and the one that I described that would eliminate the argument that I'm making to this Court, which of the two do you think is the better practice? Which of the two procedures should society more encourage? Well, society has an interest in avoiding situations like this one where the defendant leaves... Doesn't answer my question, counsel. Which should society more prefer between these two? I guess I'm not sure how to speak to society's preferences here. So you think it's better if they just say, you're under arrest, turn around, put the cuffs on him, tell the family members around, get out of the way, we're taking him out of the house, and don't interfere. That's the preferable procedure? It's much clearer. Well, it's clearer. Is that the preferable procedure? Is that the better way for the police officers to handle the situation? And this is not a trick question, because by addressing the argument you're making here, aren't we providing guidance for the police on what to do? So that if we reverse this conviction, we're telling these cops, you're chumps, you made a mistake. You handled this guy so as to avoid offending his feelings and those of the family, and the next time for you and all the police officers in the state of Illinois, don't do it this way. Isn't that what we're saying? But he wouldn't be guilty of escape the felony. The argument that fleeing an arrest attempt is less serious than fleeing a completed arrest. That was the legislature's determination in setting forth the state's penalties for these crimes. And here, whatever the police motivation, they made the decision to delay the completion of the arrest until Mr. Garza exited the house. That decision has legal implications, and that is the question before this court. What are the legal implications of this decision to delay completion of the arrest? It's not the felony offense for which the police arrested him for. So that's the message we should convey to the police? I personally find it unlikely that the police are going to make different policing decisions. You mean police trainers? You know, there's a police training that goes into this, Police Training Institute, University of Illinois. Say, okay, what are you going to do in this situation? You can be officer-friendly, or you can really seriously arrest this guy. Cuff him and stuff him. And this is what the courts have said, so we now know cuff him and stuff him. ...to respond to calls with the appropriate authority and force. And that motivation could still continue, even if, in situations like this one, a class A misdemeanor is the crime that is committed rather than the class 2 felony that was gave. There was testimony, again, Officer Dingler, on cross-examination, was asked, question, can you never physically restrain the defendant before he took off running? Answer, define restraining. Question, restraining, holding, holding him still. Answer, we did hold him as we walked him to the door. Doesn't that describe lawful custody? If lawful custody includes the exercise of control over the defendant or restriction of the defendant's freedom of movement? No, because there is other testimony from Sergeant Dingler. Well, there is this testimony that I just described, right? I believe that that testimony has to be read in context with his other testimony that he and Chief Slobey never forcibly moved Mr. Garza to the door or restricted his movement in any way. So you're saying that the jury couldn't take that testimony that I just read to you and determine, based on that testimony, that defendant's movement was being controlled by the officers as they walked him to the front door. They could not ignore the other portion of Sergeant Dingler's testimony indicating that the touching or holding of Mr. Garza's arm was essentially contact with Mr. Garza as he moved himself where he intended to go. What makes you think that he was going where he wanted to go and not where the officers were wanting him to go when they were leading him from the house? Sergeant Dingler's testimony indicating that he did not move Garza to the door, that Chief Slobey did not move Garza to the door, and that they didn't restrict his movement in any way. But they had indicated that he was under arrest and he was going to be leaving the house. But you're saying that that's not important, that instead the fact that they said they weren't controlling his movement doesn't in fact indicate that he was, his freedom was being restricted at that point. If I may respond in two ways to that, Mary. The first way is to return to the Code of Criminal Procedure and the language of how the arrest was made, which is actual restraint of the person or submission to custody. We know that this is not... Well, isn't it a submission to custody, and I know I'm interrupting you. Isn't it a submission to custody to permit the officers to escort you to your bedroom, to watch you as you were getting dressed, to come down the stairwell in such a way that there's one in front and one behind so that your freedom of movement is restrained. You have to follow the officer that's in front and move fast enough that you don't get knocked over by the officer from behind. You've taken downstairs, you've now been told several times, you're under arrest or we're getting ready to put the cuffs on you. Isn't that a restriction of his freedom of movement and multiple indications that you're not in charge, we are? No. Submission has to be submission to custody. Here we have some level of cooperation with Mr. Garza with the preparatory steps to custody. He doesn't, for instance, try to slam the door inside a dealer's face as he puts his shirt and shoes on. He doesn't, I don't know, he doesn't run at that point. He moves about the house and Sgt. Gingrich follows him throughout the house as he does what he needs to do in order to leave. What did he need to do in order to leave? The testimony indicates that he needed to put on his shirt and his shoes and he wanted to say goodbye to his community colleagues, his daughter. Was any of that necessary from the point of view of the police officers? I wouldn't think so. Then these are just accommodations made to him. The officers did not attempt to stop him from doing any of these things. That doesn't answer my question. My question was, these were all accommodations made for him and none of them were necessary for the arrest of the police sought to effectuate. Isn't that correct? Yes, that's correct. Including, he would have been nice, but he didn't have to even put shoes on, did he? This was August. They could have just scored him out to the police car in his bare feet, couldn't they? Certainly they could have done. Is it your, you seem to be arguing, let me ask you directly, that short of putting handcuffs on him when they encountered him, that anything they do to accommodate him is at least at risk of showing no arrest, if not in fact showing no arrest, no submission to custody. The only way the officers can be assured of doing that is putting him in handcuffs. Is that correct? No. I don't see handcuffing as being necessary to complete custody. If the officers in their first encounter with Mr. Garza had simply said, please come here, turn around and put your hands behind your back, that would have been the clear command, the exertion of authority. But that's preliminary to putting handcuffs on him, isn't it? Put your hands behind your back? Yes. And if Mr. Garza had submitted by turning around and putting his hands behind his back for handcuffing, then this would be a different case. But short of that, there's no circumstance that you're suggesting here that would constitute lawful custody. It would require that the individual put his hands behind his back to submit to handcuffs. It would require either actual restraint of the person through a physical struggle in which he is subdued or his clear submission to custody. I don't think that turning around and putting one's hands behind their back is the only way to submit to custody. For instance, the officer could command the person to lie down on the ground, perhaps even sit down on the curb and keep your hands where I can see them would be enough. There are different types of commands that would essentially ask for submission to custody. Here, we don't have evidence of any command that Sergeant Dingler gave Mr. Garza until he was on the court and told him to turn around and put his hands behind his back. The police didn't direct him to put his shirt and shoes on or in any way try to control or direct his movement around the house. They simply followed him as he did what he did in the house. The first exertion or attempted exertion of authority and control was on the court when Sergeant Dingler directed Mr. Garza to turn around and put his hands behind his back. Why were the officers holding him then? What did that signify if that wasn't an exercise of control? It wasn't an indication of affection, right? No, it wasn't. Good. I believe that that would be sort of a signal to Mr. Garza that the arrest was coming, that the police were trying to communicate that with their touching. We don't have any testimony as to why the police touched or held his arms for a moment by the door. But I think that a reasonable interpretation of that would be a signal to Mr. Garza that you're about to be arrested. In fact, the state on page 8 of its brief, when it raises this compassionate policing argument, seems to concede that the police chose not to complete the arrest inside the home, waited until the court to try to complete the arrest. And that is the very argument that I'm making here in reliance on the language of the experiment and in reliance on the code of criminal procedure. Here we have Mr. Garza fleeing from an arrest attempt. There is no dispute that the police were in the middle of attempting to arrest him when he fled. For that reason, he's guilty of restricting... Excuse me. I see that my time has expired and I didn't complete it. Sure. For that reason, Mr. Garza is guilty of resisting or distracting a police officer. But he is not guilty of escape. And this court should reverse that conviction and remand for entry of acquittal on that charge, judgment of conviction on the restricting or distracting charge, and the sentence. Okay. Thank you, counsel. Ms. McClain. Counsel. Although the defendant states in his brief that he does not contest the credibility of the sergeant's trial testimony or the facts that he used at trial, defendant is abandoning his version of the facts in order to obtain a less deferential standard review. In addition, even if defendant is allowed to abandon his version of the facts and rely on the officer's testimony, questions of fact remain because factual inferences must be drawn from the evidence presented at trial. Where the evidence presented is capable of producing conflicting inferences, it is a question of fact and is best left to the trial in fact for proper resolution. For example, whether defendant submitted to the police authority is one of those things that a jury would look at the facts, think that defendant walked with the officer from house to outside long enough to be called submitting to authority. That's an inference based on undisputed evidence. As for the merits, when interpreting the term custody under the escape statute, online courts have focused on the amount of control the officer had over defendant at the time of the arrest. Custody connotes physical control. A situation not involving resistance to arrest does not necessarily require physical restraint through the application of force. A person who submits to police direction without resistance may still be subject to physical control. The officer's presence in defendant's submission in concert may be sufficient for legal custody. In this case, the state is arguing that physical force is not necessary where defendant was submitting to police direction, and in this case we have both physical control and submission. The officer did more than merely announce that defendant was under arrest. The officer escorted the defendant as he said goodbye to his family, standing two feet from him and behind him as he walked downstairs. Another officer was downstairs in case defendant tried to escape. Downstairs, both officers physically restrained defendant, grabbing both of defendant's arms as they neared the front door. Defendant acquiesced and submitted to the officer's control by being escorted around the house, down the stairs, and out the door. He submitted by doing what the officers wanted, and that's what he did. In this case, defendant submitted to police direction without resistance and was subject to physical control. The officer's presence and the defendant's submission in concert was sufficient for legal custody. As a result, there was sufficient evidence for the jury to convict defendant of escape. I believe that this case is kind of right in between the Ward and McClellan cases, in which there's physical restraint and armed struggle, and Johnson, where defendant acquiesced and physically controlled. So this case is kind of like right in between those factual situations. And we ask the court to confirm defendant's conviction. Okay, thank you, counsel. Ms. Kemp, anything further? Okay, you may proceed. Counsel for the State argued that Mr. Garza, quote, submitted to police authority, quote, submitted to police direction, quote, submitted to police control. But the statute indicates that submission is to custody, not to authority, not to direction, not to control, but custody. Mr. Garza- Is this a legal question or a factual question? That is, for our purposes of review, are you arguing that the jury could not have concluded on this evidence that he submitted to custody, or are you arguing that as a matter of law, the circumstances did not meet that legal criterion? Just a brief correction that this was a bench trial, so we have the court answer- I misspoke. You are correct. So the judge is the trier of fact. So with that correction, what are we doing here? Are we, in effect, being called upon to ask whether the trial court, as trier of fact, could reasonably view this evidence as custodial, or is it your argument that the evidence as a matter of law did not show custody? The latter, Your Honor. The evidence as a matter of law cannot show custody under the proper definition. And the state in its presentation, as in its briefs, has ignored the Code of Criminal Procedure and the guidance provided by the Code of Criminal Procedure, has ignored people versus alzheimer's. This authority is crucial to understanding and properly constructing lawful custody. Control is not enough. Restriction of defendant's freedom of movement is not enough. These factors are relevant, but only insofar as they inform the central inquiry, which is whether the arrest was attempted or whether the arrest was completed. Here, the arrest was only attempted, not completed. If there are no further questions. Thank you, counsel. The court will take this matter under advisory to be in recess until 1 o'clock.